MATTHEW C. LAPPLE (SBN 193546)
Email: matt@lappleubell.com
HA TRAN LAPPLE (SBN 225022)
Email: ha@lappleubell.com
LAPPLE UBELL IP LAW, LLP
19800 MacArthur Blvd 3rd Floor
Irvine, CA 92612
Telephone: (949) 756-4889
Facsimile: (949) 242-9789

Attorneys for Plaintiff
GLAM AND GLITS NAIL DESIGN, INC.,
d/b/a KIARA SKY PROFESSIONAL NAILS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO / OAKLAND DIVISION**

GLAM AND GLITS NAIL DESIGN, INC., a California corporation,

Plaintiff,

vs.

DOES 1 through 20, inclusive, and META PLATFORMS, INC.,

Defendants.

Case No. ____________________

**COMPLAINT FOR:**

**(1) MISREPRESENTATION OF COPYRIGHT INFRINGEMENT UNDER THE DMCA (17 U.S.C. § 512(f));**

**(2) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS;**

**(3) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**

**(4) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200 et seq.;**

**(5) DECLARATORY AND INJUNCTIVE RELIEF;**

**(6) BREACH OF CONTRACT;**

**(7) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;**

**(8) PROMISSORY ESTOPPEL; AND**

**DEMAND FOR JURY TRIAL**

Plaintiff Glam and Glits Nail Design, Inc., a California corporation doing business as "Kiara Sky Professional Nails" ("Kiara Sky" or "Plaintiff"), by and through its undersigned counsel, states as follows for its complaint against DOE Defendants 1 through 20, inclusive (the "DOE Defendants"), and Defendant Meta Platforms, Inc. ("Meta").

## NATURE OF THE ACTION

1. Plaintiff manufactures and sells the highly successful KIARA SKY® brand of nail products, including nail polish, nail gel, nail dipping powder, nail curing lamps, electric nail drills, and nail dust collectors.

2. Since 2013, Plaintiff has owned and operated the Instagram account "@kiaraskynails."[1]

3. As of July 2026, the @kiaraskynails Instagram Account had approximately 2.7 million followers.

4. Plaintiff regularly and routinely used the @kiaraskynails Instagram Account to communicate with its customers, the nail industry, and the public.

5. Plaintiff understands that its use of the @kiaraskynails Instagram Account is subject to and defined by Meta's "Terms of Use" ("TOU") for the Instagram service.

6. Plaintiff regularly and routinely contracted with nail artists and Instagram influencers in the nail industry to film videos of nail "looks" using KIARA SKY® products for the purpose of creating content for the KS Instagram

---

1 Hereinafter, "@kiaraskynails Instagram Account" or "KS Instagram Account."

Account. As specifically contemplated by those creator contracts, once the posts are created, Plaintiff then posted them on the KS Instagram Account and tagged the respective artist or influencer who made the video.

7. Prior to July 2026, Plaintiff's @kiaraskynails Instagram Account generated approximately $100,000 monthly in direct ad related sales. However, the total impact of the KS Instagram Account on Plaintiff's revenues is much higher. Customers also discovered Plaintiff through the @kiaraskynails Instagram Account post or an allied creator post then later purchased KIARA SKY® products through Plaintiff's website, Amazon, Sally Beauty, CosmoProf, another retailer, a distributor, or made a repeat purchase. The KS Instagram Account also supported Plaintiff's new product launches, brand awareness, retailer demand, creator relationships, customer acquisitions, and overall goodwill.

8. This action arises both (a) from a coordinated misuse of Meta's copyright-infringement-reporting system by unknown third parties directed against Plaintiff's KS Instagram Account; and (b) from Defendant Meta's consequent and continued suspension of the KS Instagram Account and refusal to review appeals of that deactivation despite specific promises made to Plaintiff by Defendant Meta that Meta would review Plaintiff's appeal and clear evidence of the falsity of such reports.

9. Specifically, Plaintiff brings this action after Defendants DOES 1–20 knowingly and intentionally submitted six (6) false online copyright complaints ("the False Online Copyright Complaints") against six different posts appearing on Plaintiff's @kiaraskynails Instagram Account.

10. Defendant Meta removed each of the six targeted postings ("the Six Takedowns"). After the sixth takedown, Meta deactivated Plaintiff's

@kiaraskynails Instagram Account entirely on July 21, 2026 ("the Deactivation"), citing the total number of the False Online Copyright Complaints. Meta provided no additional reason for the Deactivation.

11. Defendant Meta also gave notice that it will permanently delete the @kiaraskynails Account altogether on or after January 17, 2027.

12. On information and belief, the DOE Defendants, and each of them, are business competitors of Plaintiff and knowingly submitted the False Online Copyright Complaints in a tortious scheme to interfere with Plaintiff's business.

13. Meta's Instagram TOU provide in part that Meta will investigate and take reasonable steps to prevent Instagram users from impersonating others, providing inaccurate personally identifying information to Meta, or engaging in acts that are unlawful, misleading, fraudulent or for an illegal purpose. Defendant's TOU further provide that Meta will investigate and take reasonable steps to prevent Instagram users from "misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports …."

14. Accordingly, Plaintiff sought to appeal the Takedowns and the Deactivation using Meta's prescribed internal channels.

15. Using Meta's preferred online "appeal" forms, Plaintiff submitted to Meta declarations and additional evidence[2] demonstrating that Plaintiff had contractual permission from each respective nail artist or influencer to post each of the videos identified and targeted by the False Online Copyright Complaints.

16. In response to Plaintiff's Internal Appeal Submissions, Defendant Meta and its representatives repeatedly promised Plaintiff that Meta would

---

[2] Hereinafter, the "Internal Appeals Submissions."

review the Internal Appeal Submissions. In making these promises, Defendant Meta implied that, if Plaintiff demonstrated the falsity of the False Online Copyright Complaints and that Plaintiff had not infringed any of the six copyrighted works, then Defendant Meta would restore Plaintiff's @kiaraskynails Instagram Account.

17. To the best of Plaintiff's knowledge, Defendant Meta did not investigate or take any action in response to Plaintiff's Internal Appeal Submissions.

18. Plaintiff's efforts to contact Meta and facilitate investigation of the Internal Appeal Submissions have been fruitless. For more than three months, as the parties near the January 17, 2027 permanent-deletion deadline, Defendant Meta has not provided Plaintiff with any substantive information regarding its repeatedly promised "review" of the Internal Appeal Submissions.

19. Instead, Defendant Meta suggested that Plaintiff contact and reach an agreement with the reporting parties who filed the six False Online Copyright Complaints and stated in substance that if the six False Online Copyright Complaints are withdrawn, Defendant Meta may restore the @kiaraskynails Instagram Account.

20. On September 22, 2026, Plaintiff through counsel submitted a counter notice compliant with 17 U.S.C. § 512(g) ("DMCA Counter Notice") by personal service upon Defendant Meta's authorized agent for service of process and by email to Defendant Meta's email account, ip@meta.com, as directed by Defendant Meta.

21. As of the filing of this Complaint, the DOE Defendants have not served any copyright lawsuit upon Plaintiff related to any of the six False Online

Copyright Complaints.

22. As of the filing of this Complaint, Defendant Meta has not re-activated the @kiaraskynails Instagram Account nor restored the six contractually-created videos removed by the Takedowns.

23. Logically, because the only ground Meta cited for the Deactivation was the six Takedowns, if and when Meta acknowledges — or this Court declares — that all six of the False Online Copyright Complaints are, in fact, false, Meta will be obligated to reactivate and restore the Plaintiff's @kiaraskynails Instagram Account to the state in which it was as of July 21, 2026.

24. By this Complaint, Plaintiff first seeks to identify Defendant DOES 1–20 and hold them accountable for their intentional and knowing submission of the False Online Copyright Complaints.

25. By this Complaint, Plaintiff also seeks to hold Defendant Meta accountable for its failure to comply with its TOU and promised review of the False Online Copyright Complaints, the Takedowns, the Internal Appeal Submissions, and to restore the @kiaraskynails Instagram Account.

26. Plaintiff brings claims against the DOE Defendants for misrepresentation of copyright infringement under the Digital Millennium Copyright Act, 17 U.S.C. § 512(f), for tortious interference with contractual relationships, for tortious interference with prospective economic relationships, and for unfair competition under Cal. Bus. & Prof. Code § 17200 et seq.

27. Plaintiff brings claims against Defendant Meta and the DOE Defendants for declaratory and injunctive relief, breach of contract, breach of the implied promise of good faith and fair dealing, and promissory estoppel.

28. Plaintiff will seek limited expedited discovery to identify the true and correct names of DOES 1–20.

29. Plaintiff will also seek a preliminary injunction against Defendant Meta to restore Plaintiff's @kiaraskynails Instagram Account or, in the alternative, to take positive measures to preserve from deletion for the duration of this case Plaintiff's @kiaraskynails Instagram Account and all data associated therewith.

## THE PARTIES

30. Plaintiff Glam and Glits is a California corporation with its principal place of business located in Bakersfield, California.

31. Plaintiff does business as "Kiara Sky Professional Nails."

32. Plaintiff is ignorant of the true name and capacities of the defendants sued herein as DOES 1 to 20, inclusive, and therefore sues the DOE Defendants under these fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when these are ascertained through expedited discovery or otherwise.

33. Plaintiff is informed and believes and, on this basis, alleges that each of DOE Defendants was an agent, employee, and/or co-conspirator of the remaining DOE Defendants and, at all times mentioned, acted within the course and scope of such agency, employment and/or conspiracy.

34. Defendant Meta is a publicly traded Delaware corporation with its principal place of business located within this District at 1 Hacker Way, Menlo Park, California, 94025.

35. Defendant Meta is the owner and operator of the Instagram social-media service.

## JURISDICTION AND VENUE

36. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the Copyright Act, 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1331 and § 1338; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

37. This Court has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), in that the state-law claims form part of the same case or controversy as the federal claims.

38. This Court has personal jurisdiction over Defendants DOES 1–20 because they conducted business in the State of California through, among other things, targeting Plaintiff's @kiaraskynails Instagram Account posts, made by Plaintiff, a California resident, and using the Internet to send electronic communications containing false statements to Defendant Meta regarding Plaintiff in California.

39. This Court has personal jurisdiction over Defendant Meta because it transacts business in California and because the conduct alleged in this complaint occurred in, was directed to, and/or emanated from California.

40. Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because Defendant Meta is headquartered in this District, because Meta conducts business in this District, and because the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

41. Venue is also proper in this district under Meta's choice-of-venue

provision in the Instagram Terms of Use, which Plaintiff invokes.

42. This case is not subject to arbitration under the Instagram Terms of Use because it involves a dispute related to intellectual property.

43. For divisional assignment under Civil Local Rule 3-2, Plaintiff alleges that a substantial part of Meta's relevant conduct occurred or was administered in San Mateo County, where Meta is headquartered, making assignment to the San Francisco or Oakland Division appropriate.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiff's @kiaraskynails Instagram Account

44. Plaintiff registered the @kiaraskynails Instagram Account in 2013 and has used this account continuously for the last thirteen years.

45. As of the date on which Defendant Meta deactivated it, Plaintiff's @kiaraskynails Instagram Account had approximately 2.7 million followers.

46. Kiara Sky sells products through its own channels and through national and professional beauty channels, including Sally Beauty, CosmoProf, Amazon, independent beauty-supply stores, and distributors.

47. Plaintiff's @kiaraskynails Instagram Account served as an important communication tool for Plaintiff to support its customers.

48. The @kiaraskynails Instagram Account also supported creator collaborations, product launches, educational content, advertising, customer acquisition, brand awareness, retailer and distributor relationships, and traffic to Plaintiff's other sales channels.

49. Plaintiff's @kiaraskynails Instagram Account serves as one of Plaintiff's marketing and sales channels. The @kiaraskynails Instagram Account is linked to a Facebook Page for "Kiara Sky Professional Nails" and a Meta Business Manager account. The @kiaraskynails Instagram Account also is integrated with Defendant Meta's "Instagram Shopping" application through, inter alia, the use of Instagram's product-tagging features.

50. Before the Deactivation, and aside from the six False Online Copyright Complaints, Plaintiff's @kiaraskynails Instagram Account had never received any warnings, notices of policy violations, "copyright strikes," or suspensions.

51. To the best of Plaintiff's knowledge, Plaintiff fully complied with Defendant Meta's "Terms of Use" and "Community Standards," including terms relating to intellectual property.

52. Plaintiff maintains more than forty (40) active creator and influencer collaborations that rely on the continued uninterrupted use of the @kiaraskynails Instagram Account for posting, reposting, and tagging obligations.

53. Prior to the Deactivation, Plaintiff's @kiaraskynails Instagram Account generated approximately $100,000 monthly in direct ad related sales. However, the total impact of the KS Instagram Account on Plaintiff's revenues is much higher. Customers also discovered Plaintiff through the @kiaraskynails Instagram Account post or an allied creator post then later purchased KIARA SKY® products through Plaintiff's website, Amazon, Sally Beauty, CosmoProf, another retailer, a distributor, or made a repeat purchase. The KS Instagram Account also supported Plaintiff's new product launches, brand awareness, retailer demand, creator relationships, customer acquisitions, and overall goodwill.

54. Plaintiff's @kiaraskynails Instagram Account also played a major role in building Plaintiff's Business over the past 13 years. Plaintiff's Deactivation-related losses extend beyond directly-tracked ad sales and include lost organic sales from the KS Instagram Account posts, repeat customer purchases, product launch visibility, creator partnerships, and purchases through distributors and retailers by customers who discover its products on Instagram.

55. Moreover, the Deactivation severed Plaintiff's access to an audience Plaintiff spent years building, affecting Plaintiff's ability to reach customers and support continued growth.

## The DOES' Intentional and Knowing False Online Copyright Complaints

### *The 1st False Online Copyright Complaint: Defendant Meta's Instagram Report #1752319406052051*

56. On July 4, 2026, Defendant Meta's Instagram service notified Plaintiff that, in response to a copyright complaint received, Instagram removed from Plaintiff's @kiaraskynails Instagram Account the video entitled, "Capri Sun / Amalfi Coast set" (content URL: instagram.com/reel/DY-NpVzJI3E/) (content originally uploaded on May 27, 2026), created by Creator Aiste Haas using the Instagram handle @heygreatnails (the "Capri Sun / Amalfi Coast Post").

57. The complainant of the Capri Sun / Amalfi Coast Post used the name "Aiste Haas" and listed their email as "Forsttom8@gmail.com."

58. Ms. Haas, who created the Capri Sun / Amalfi Coast Post, did not submit the complaint and does not use the email address Forsttom8@gmail.com.

59. Plaintiff had uploaded the Capri Sun / Amalfi Coast Post with the express permission of the true Aiste Haas, its creator, pursuant to a collaboration

contract between Kiara Sky and Ms. Haas.

### *The 2nd False Online Copyright Complaint: Defendant Meta's Instagram Report #2158444548039876*

60. On July 4, 2026, Defendant Meta's Instagram service notified Plaintiff that, in response to a copyright complaint received, Instagram removed from Plaintiff's @kiaraskynails Instagram Account the post entitled, "Aquarium mermaid nails" (content URL: instagram.com/reel/DZ0 SY_jyYAT/) (content originally uploaded on June 19, 2026), created by Aiste Haas using the Instagram handle @heygreatnails (the "Aquarium Mermaid Nails Post").

61. The complainant of the Aquarium Mermaid Nails Post used the name "Aiste Haas" and listed their email as "Forsttom8@gmail.com."

62. Ms. Haas, who created the Aquarium Mermaid Nails Post, did not submit the complaint and does not use the email address "Forsttom8@gmail.com."

63. Kiara Sky uploaded the Aquarium Mermaid Nails Post with the express permission of the true creator, Aiste Haas, pursuant to a collaboration contract between Kiara Sky and Ms. Haas.

### *The 3rd False Online Copyright Complaint: Defendant Meta's Instagram Report #1346612460896259*

On July 4, 2026, Defendant Meta's Instagram service notified Plaintiff that, in response to a copyright complaint received, Instagram removed from Plaintiff's @kiaraskynails Instagram Account the post entitled, "Unexpected detail / sunny bold nails" (content URL: instagram.com/reel/DZs-bZthWG2/) (content originally uploaded on June 17, 2026), created by Simuzar Yolchiyeva using the

Instagram handle @simlynail (the "Sunny Bold Nails Post").

64. The complainant of the Sunny Bold Nails Post used the name "Simu Essof" and listed their email as "Salimartinxx@gmail.com."

65. Ms. Yolchiyeva, who created the Sunny Bold Nails Post, did not submit the complaint regarding the Sunny Bold Nails Post, does not use the name "Simu Essof," and does not use the email address "Salimartinxx@gmail.com."

66. Plaintiff uploaded the Sunny Bold Nails Post with the express permission of the true creator, Simuzar Yolchiyeva, pursuant to a collaboration contract between Kiara Sky and Ms. Yolchiyeva.

***The 4th False Online Copyright Complaint:***
***Defendant Meta's Instagram Report #1719934745917054***

67. On July 5, 2026, Defendant Meta's Instagram service notified Plaintiff that, in response to a copyright complaint received, Instagram removed from Plaintiff's @kiaraskynails Instagram Account the post entitled, "Old money nail era" (content URL: instagram.com/reel/DZx gxaetzNu/) (content originally uploaded Jun. 19, 2026), created by Paula Rumjanceva, whose Instagram creator handle is @nailsbypaular (the "Old Money Nail Era Post").

68. The complainant of the Old Money Nail Era Post used the name "Paula Zheng" and listed their email as "Albertmurs7@gmail.com."

69. Ms. Rumjanceva, who created the Old Money Nail Era Post, did not submit the complaint regarding the Old Money Nail Era Post, does not use the name "Paula Zheng," and does not use the email address Albertmurs7@gmail.com.

70. Plaintiff uploaded the Old Money Nail Era Post with the express permission of its true creator, Paula Rumjanceva, pursuant to a collaboration contract between Kiara Sky and Ms. Rumjanceva.

***The 5th False Online Copyright Complaint: Defendant Meta's Instagram Report #1516593163550736***

71. On July 12, 2026, Defendant Meta's Instagram service notified Plaintiff that, in response to a copyright complaint received, Instagram removed from Plaintiff's @kiaraskynails Instagram Account the post entitled, "Lemons on nails" (content URL: instagram.com/reel/DZY allUh6NL/) (content originally uploaded Jun. 9, 2026), created by Mairin Diaz under the Instagram handle @nailsbymairin (the "Lemons on Nails Post").

72. The complainant of the Lemons on Nails Post used the name "Mairin Diaz" and listed their email as Salimartinxx@gmail.com. This same email was listed as belonging to the complainant of the Sunny Bold Nails Post. However, the two posts were created by different creators.

73. Ms. Diaz, who created the Lemons on Nails Post, did not send the complaint regarding the Lemons on Nails Post, and does not use the email address Salimartinxx@gmail.com.

74. Kiara Sky uploaded the Lemons on Nails Post with the express permission of its true creator, Mairin Diaz, pursuant to a collaboration contract between Kiara Sky and Ms. Diaz.

***The 6th False Online Copyright Complaint: Defendant Meta's Instagram Report #981126971602294***

75. On July 21, 2026, Defendant Meta's Instagram service notified Plaintiff that, in response to a copyright complaint received, Instagram removed

from Plaintiff's @kiaraskynails Instagram Account the post entitled, "Vamp It Up" (content URL: instagram.com/reel/Da8 Ym6NvNjs/) (content originally uploaded Jul. 17, 2026) by Creator Alysha Davies, whose Instagram creator handle is @byalyshaelise (the "Vamp It Up Post").

76. The complainant of the Vamp It Up Post used the name "Alysha Malke" and listed their email as "Forsttom8@gmail.com."

77. The complainant of Vamp It Up Post used the same email address — Forsttom8@gmail.com — as the complainant of the Capri Sun / Amalfi Coast Post and the Aquarium Mermaid Nails Post. These three works were made by two different creators.

78. Ms. Davies, who created the Vamp It Up Post, did not send the complaint regarding the Vamp It Up Post, does not go by the name "Alysha Malke," and does not use the email address "Forsttom8@gmail.com."

79. Kiara Sky uploaded the Vamp It Up Post with the express permission of the creator, Ms. Alysha Davies, pursuant to a collaboration contract between Kiara Sky and Ms. Davies.

80. The six False Online Copyright Complaints were submitted within approximately 17 days using only three (3) Gmail addresses.

81. Forsttom8@gmail.com was used for three complaints purporting to assert rights associated with two different creators. Salimartinxx@gmail.com was used for two complaints associated with two different creators.

82. In three of the six False Online Copyright Complaints, the name used on the claim did not match the actual creator's name.

## The DOES' Knowingly and Intentionally Submitted False Copyright Complaints to Meta

83. On information and belief, DOES 1–20, and each of them, knew at the time that they submitted the False Online Copyright Complaints that the False Online Copyright Complaints were false and misleading.

84. As provided by Defendant Meta's TOU and Community Standards, in order to submit a valid online copyright complaint to Defendant Meta, the complainant must either own the copyright in question or be the agent of the copyright owner. Further, the party submitting the online copyright complaint must have a good faith belief that another party used the copyrighted work without permission.

85. On information and belief, DOES 1–20, and each of them, knew at the time that they submitted the False Online Copyright Complaints that the complainant did not own the copyright in question and did not represent the owner identified in each of the respective False Online Copyright Complaints.

86. On information and belief, DOES 1–20, and each of them, knew at the time that they submitted the False Online Copyright Complaints that the complainant did not have a good faith belief that Plaintiff used the copyrighted work identified in the respective False Online Copyright Complaint without permission.

87. As provided by Defendant Meta's TOU and Community Standards, in order to submit a valid online copyright complaint to Defendant Meta, the party submitting the online copyright complaint must provide a valid and active email address.

88. On information and belief, DOES 1–20, and each of them, created at

least three “dummy” email accounts — namely “Forsttom8@gmail.com,” “Salimartinxx@gmail.com,” and “Albertmurs7@gmail.com” (collectively the “Dummy Email Accounts”) — for the purpose of submitting the False Online Copyright Complaints.

89. On information and belief, DOES 1–20, and each of them, used these Dummy Email Accounts to submit the False Online Copyright Complaints in a manner which disguised or falsified the identities of DOES 1–20, and each of them.

90. On information and belief, DOES 1–20, and each of them, used the Dummy Email Accounts so as to prevent Plaintiff from identifying the true identities of the person or persons who submitted each of the False Online Copyright Complaints.

91. On information and belief, DOES 1–20, and each of them, is a business, an owner of said business, an employee of said business, and/or an agent of said business, all of whom are involved with or participating in the Nail Industry.

92. On information and belief, DOES 1–20, and each of them, are direct competitors with Plaintiff with respect to the sale and marketing of nail polish products.

93. On information and belief, DOES 1–20, and each of them, acted with malicious intent to harm Plaintiff and to interfere with Plaintiff’s business relations when DOES 1–20, and each of them, submitted the False Online Copyright Complaints.

94. Plaintiff does not presently know the true identities, affiliations, locations, devices, accounts, or network information associated with the DOES

1–20. That identifying information is expected to be held principally by Defendant Meta, and potentially by Google and internet service providers, which Plaintiff will seek after lawful process.

## The Suspicious Timing of the False Online Copyright Complaints

95. The timing of the False Online Copyright Complaints is suspicious.

96. Further, the timing of the submission of the False Online Copyright Complaints raises an inference that they were false and part of an intentional and malicious scheme to harm Plaintiff.

97. The first three False Online Copyright Complaints (for the Capri Sun / Amalfi Coast Post, the Aquarium Mermaid Nails Post, and the Sunny Bold Nails Post, respectively) all were submitted to Defendant Meta within approximately one hour of one another, between 12:13 AM and 1:17 AM Pacific time on Saturday, July 4, 2026, namely Independence Day.

98. The fourth False Online Copyright Complaint (for the Old Money Nail Era Post) was submitted to Defendant Meta on the following day, Sunday, July 5, 2026.

99. Thus, the first three False Online Copyright Complaints were submitted during the Independence Day holiday weekend.

100. The largest — and most important — annual trade show for cosmetics and nail products in the United States is called “CosmoProf.”

101. Plaintiff is a regular exhibitor at CosmoProf and has been so for the past eighteen (18) years.

102. Typically, Plaintiff launches new products at CosmoProf and receives a large percentage of its annual orders based on deals made just before, during, and after CosmoProf.

103. Exhibiting at CosmoProf requires tremendous effort and planning, including attending to the delivery and set-up of the complex exhibition booth, scheduling meetings with current and potential customers, scheduling meetings with vendors and potential vendors, and preparing to market newly-launched products.

104. In 2026, CosmoProf 2026 was held on July 13–15, 2026.

105. Between July 6–12, 2026, Plaintiff's owners and employees were fully engaged in preparations for CosmoProf.

106. On information and belief, DOES 1–20 knew that Plaintiff's owners and employees would be fully engaged in such preparations and that they would be less likely to respond to a rapidly-filed series of false online copyright complaints made to Defendant Meta.

107. The fifth False Online Copyright Complaint (for the Lemons on Nails Post) was submitted to Defendant Meta on Sunday, July 12, 2026 — i.e., the day before the CosmoProf show began.

108. The sixth False Online Copyright Complaint (for the Vamp It Up Post) was submitted to Defendant Meta in the early morning of Tuesday, July 21, 2026 — i.e., approximately one week after CosmoProf 2026 ended.

## Defendant Meta's Deactivation of Plaintiff's @kiaraskynails Instagram Account

109. On July 21, 2026, at 3:13 am, Defendant Meta sent Plaintiff an email

notice from no-reply@mail.instagram.com stating,

> Your Instagram account has been suspended. This is because your account, or activity on it, doesn't follow our Terms of Use on intellectual property …. If you think we made a mistake, you have until January 17, 2027 to appeal …. If you don't take action, your account will be permanently disabled.

110. The @kiaraskynails Instagram Account is now completely inaccessible to Plaintiff, which cannot log in to or view any part of it.

## Plaintiff's Compliance with Defendant Meta's Appeal Process

111. Plaintiff submitted an "appeal" on July 21, 2026 — the day of the disablement — through Defendant Meta's in-app and "Help Center" forms for each of the six False Online Copyright Complaints.

112. In response to each of the Plaintiff's July 21, 2026 "appeals," Defendant Meta sent Plaintiff an automated email response that stated:

> Thank you for taking the time to submit an appeal against the decision to disable your account … If you believe your account was disabled in error, you can reply to this email explaining why you believe that your account did not go against our Terms of Use ….

113. Defendant Meta did not identify an individual reviewer, timeline, or any case-specific details.

114. Plaintiff received automated confirmation under Appeal Case #925411780572199, together with an instruction to wait one hundred twenty (120) hours before attempting to further escalate the dispute.

115. Plaintiff did, in fact, reply to the automated email response.

116. Specifically, Plaintiff submitted additional information in support of the "appeal" to demonstrate that Plaintiff was authorized to make each post, that none of the posts were copyright infringement, and that the False Online Copyright Complaints were in fact false and misleading.

117. Following Instagram's removal of the Capri Sun / Amalfi Coast Posting, Plaintiff reached out to the creator. Creator Haas confirmed in writing that she did not submit the copyright complaint relating to her post to Instagram and that she did not authorize anyone else to submit the copyright complaint.

118. Attached hereto as **Exhibit 1** is a true and correct copy of the email from Creator Haas confirming in writing that she authorized Kiara Sky to post the Capri Sun / Amalfi Coast Posting.

119. On or about July 22, 2026, Plaintiff submitted **Exhibit 1** to Defendant Meta, using Meta's online "appeals" forms.

120. Following Instagram's removal of the Aquarium Mermaid Nails Post, Plaintiff reached out to the creator. Creator Haas confirmed to Kiara Sky in writing that she did not submit the copyright complaint relating to her post to Instagram and that she did not authorize anyone else to submit the copyright complaint.

121. Creator Haas' writing of **Exhibit 1**, referenced in ¶ 119 above, also confirms that she authorized Plaintiff to post the Aquarium Mermaid Nails Post.

122. On or about July 22, 2026, Plaintiff submitted **Exhibit 1** to Meta, using Meta's online "appeals" forms.

123. Following Instagram's removal of the Sunny Bold Nails Post, Plaintiff reached out to the creator. Creator Yolchiyeva confirmed to Kiara Sky in

writing that she did not submit the copyright complaint relating to her post to Instagram and that she did not authorize anyone else to submit the copyright complaint.

124. Attached hereto as **Exhibit 2** is a true and correct copy of the email from Creator Yolchiyeva confirming in writing that Plaintiff had permission to post the Sunny Bold Nails Post.

125. On or about July 22, 2026, Plaintiff submitted **Exhibit 2** to Meta, using Meta's online "appeals" forms.

126. Following Instagram's removal of the Old Money Nail Era Post, Plaintiff reached out to the creator. Creator Rumjanceva confirmed in writing that she did not submit the copyright complaint relating to her post to Instagram and that she did not authorize anyone else to submit the copyright complaint.

127. Attached hereto as **Exhibit 3** is a true and correct copy of the email from the creator confirming in writing that Plaintiff had permission to post the Old Money Nail Era Post.

128. On or about July 22, 2026, Plaintiff submitted **Exhibit 3** to Meta, using Meta's online "appeals" forms.

129. Following Instagram's removal of the Lemons on Nails Post, Plaintiff reached out to the creator. Creator Diaz confirmed in writing that she did not submit the copyright complaint relating to her post to Instagram and that she did not authorize anyone else to submit the copyright complaint.

130. Attached hereto as **Exhibit 4** is a true and correct copy of the email from the creator confirming in writing that Kiara Sky has permission to post the Lemons on Nails Post.

131. On or about July 22, 2026, Plaintiff submitted **Exhibit 4** to Defendant Meta, using Meta's online "appeals" forms.

132. Following Instagram's removal of the Vamp It Up Post, Plaintiff reached out to the creator. Ms. Davies confirmed in writing that she did not submit the copyright complaint relating to her post to Instagram and that she did not authorize anyone else to submit the copyright complaint.

133. Attached hereto as **Exhibit 5** is a true and correct copy of the email from the creator confirming in writing that Plaintiff had permission to post the Vamp It Up Post.

134. Collectively, **Exhibits 1–5**, and the online forms completed by Plaintiff at the direction of Defendant Meta are referred to herein as the "Internal Appeal Submissions."

135. Defendant Meta's email on July 21, 2026 advised Plaintiff that it could appeal the Deactivation and stated or implied that Defendant Meta would utilize its teams and systems to investigate the False Online Copyright Complaints, such that, if Defendant Meta determined that Plaintiff had in fact not infringed copyrights, Plaintiff's @kiaraskynails Instagram Account would be restored.

136. Defendant Meta's copyright-help materials (further addressed below) state that, after receipt of a valid and adequately substantiated copyright appeal, Defendant Meta will review the appeal "expeditiously" and that appeals may be resolved where the content is not infringing or the initial report was a mistake.

137. Plaintiff relied, to its detriment, on the statements and promises of Defendant Meta.

## Plaintiff's Additional Efforts to Address Meta's Deactivation of the @kiaraskynails Instagram Account

138. In parallel, and in addition to the Internal Appeal Submissions, Plaintiff attempted to use other channels provided by Defendant Meta to resolve the dispute.

139. Specifically, Plaintiff attempted to start a live chat with Meta Business Support, sent a direct email to Meta's designated copyright agent, and reached out through Plaintiff's contact within the Meta Ads department as well as through a "Meta Marketing Pro" representative.

140. None of Defendant Meta's representatives responded substantively to Plaintiff's disputation of the False Online Copyright Complaints or to the Deactivation of the @kiaraskynails Instagram Account.

141. Defendant Meta's limited communications to Plaintiff do not indicate that Defendant Meta ever considered or attempted to reconcile the six False Online Copyright Complaints against one another, despite: (a) the common identifying details between them; (b) their use of incorrect creator names; and (c) Plaintiff's submission of proof of its authorization to post the subject works.

142. Defendant Meta's Meta Business Support live chat representative did make certain representations to Plaintiff regarding what Defendant Meta would do to investigate the False Online Copyright Complaints and the Deactivation.

143. Specifically, on July 21, 2026, Defendant Meta's agent "Luke" engaged in an online live chat with a representative of Plaintiff. "Luke" stated and promised, on behalf of Defendant Meta that:

> To summarize our chat today, you contacted us about your Instagram account @kiaraskynails . . . being restricted due to a copyright issue, and we have discussed the details of the case and the appeals process, including the option to submit a Copyright Appeal Contact Form, ***and I will be following up with you further on this matter.***

144. Attached as **Exhibit 6** is a copy of this chat with "Luke."

145. Plaintiff did, in fact, submit the Copyright Appeal Contact Form as recommended by "Luke."

146. Defendant Meta's agent "Luke" did not follow up further with Plaintiff on this matter after the chat ended.

147. Specifically, on July 23, 2026, Defendant Meta's agent "Nabil" engaged in an online live chat with a representative of Plaintiff. "Nabil" stated and promised, on behalf of Defendant Meta that:

> We were told to ask you to submit only one appeal for each claim and wait for 120 hours ….
>
> In case you are not responded to or rejected after waiting 120 hours for resubmission, only then will be able to take further steps to proceed.
>
> Apologies, Kiara, ***we were consulting with our Expert team to look at different paths to proceed in order to expedite the process***. However, ***the only escalation path will be available to us once the above mentioned steps are taken and some hours have passed***.
>
> We can understand that the situation may not be ideal but I sincerely request you to be patient and bear with the process.

* * *

> ***Once the period of 120 hours has ended and you haven't heard from our designated intellectual property team, or you would like to challenge their decision, please initiate a new chat similarly as this one. And provide us with the case ID for this interaction, and we can continue assisting you and proceed with your request***.
>
> For future reference, the case ID of this interaction is 1696411141575700.
>
> To summarize our chat today, you have contacted us about your disabled Instagram business account . . . due to fraudulent copyright complaints, and ***we have directed you to wait 120 hours after submitting a single appeal for each claim, after which we can take further steps to assist you, and also provided guidance on how to follow up with us directly once the 120 hours are up***.

148. Attached as **Exhibit 7** is a copy of this live chat with "Nabil."

149. Specifically, on July 27, 2026, Defendant Meta's agent "Kathy" engaged in an online live chat, and a phone call, with a representative of Plaintiff. "Kathy" stated and promised, on behalf of Defendant Meta that:

> To summarize our chat today, you contacted us about your Instagram account being disabled due to copyright complaints and we've discussed the review process and the impact on your business. ***I've offered to look into your ongoing tickets and have also requested a call to further discuss your issue and potential next steps to resolve it.***

150. Attached as **Exhibit 8** is a copy of this chat with "Kathy."

151. "Kathy" did not call Plaintiff at any time after this chat ended to further discuss the issue and potential next steps to resolve it.

152. Specifically, on August 3, 2026, Defendant Meta's agent "J" engaged in an online chat, and a phone call, with a representative of Plaintiff. "J" stated and promised, on behalf of Defendant Meta that:

> To summarize our chat today, you contacted us about your deactivated Instagram business account due to a copyright infringement issue and ***I have already informed you that our team is still conducting the investigation regarding the Instagram account that has been restricted.*** For your reference, here is the case ID. 1522761512320133.

153. Attached as **Exhibit 9** is a copy of this chat with "J."

154. As of the filing of this Complaint, which is more than two months after the last chat with "J," no representative of Defendant Meta has contacted Plaintiff with any report, update, status, request for further information, or otherwise, regarding the alleged "investigation," the Takedowns, the Deactivation, the False Online Copyright Complaints, or the Internal Appeal Submissions, other than to suggest either that: (a) Plaintiff make another submission using a different "appeals" form; or that (b) Plaintiff resolve the six False Online Copyright Complaints with the DOE Defendants who falsely submitted the reports in the first place.

## Defendant Meta's Instagram Terms of Use and Help Center Instructions

155. Meta's Instagram Terms of Use include, inter alia, the following provisions:

> "We develop and use tools and offer resources to our community members that help make their experiences positive and inclusive, including when we think they might need help. ***We also have teams and systems that***

> ***work to combat abuse and violations of our Terms and policies, as well as harmful and deceptive behavior***."
>
> "You can't impersonate others or provide inaccurate information. You don't have to disclose your identity on Instagram, but you must provide us with accurate and up to date information including registration information), which may include providing personal data. Also, ***you may not impersonate someone or something you aren't*** . . ."
>
> "You can't do anything to interfere with or impair the intended operation of the Service. This includes misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals."
>
> "If you believe your account has been terminated in error . . . consult our Help Center."

156. Instagram's Help Center includes the following instructions regarding "How to appeal the removal of content on Instagram or Threads for copyright reasons":

> If your content was removed because of a copyright report, you can submit an appeal or a DMCA counter-notification. You received instructions in the message we sent you.
>
> If we have informed you that content you posted was removed under the notice and counter-notice procedures of the United States Digital Millennium Copyright Act (DMCA), you may be able to file a DMCA counter-notification. Learn more about DMCA counter-notifications.
>
> If your content was removed because of a copyright report submitted outside the DMCA procedures, you can submit an appeal. Instructions about how to submit an appeal are included in the message we have sent you. If your account has been disabled, you can submit an

> appeal by logging into your account and following the on-screen instructions.
>
> ***Once we are in receipt of a valid and adequately substantiated appeal, we will review it expeditiously. Appeals can often be resolved quickly when our requests for further information are responded to promptly, where the content in question is not infringing and does not violate our Terms of Service or Community Standards***, or where the initial report was a mistake. Appeal decisions can take longer in circumstances where additional review or analysis by our teams is required.[3]

157. To date, Defendant Meta has not notified Plaintiff that the Internal Appeal Submissions were not "a valid and adequately substantiated appeal."

158. To date, Defendant Meta has not made any "requests for further information" from Plaintiff.

## Plaintiff's Letter with Evidence to Defendant Meta

159. On July 28, 2026, Plaintiff's attorney mail-served Defendant Meta with a letter summarizing Plaintiff's business relationship with Defendant Meta, setting forth the chronology of the six False Online Copyright Complaints, and identifying apparent inconsistencies among the six submitted complaints. ("the July 28, 2026 Letter").

160. Attached as **Exhibit 10** is a copy of the July 28, 2026 Letter.

161. To date, Defendant Meta has not responded to the July 28, 2026 Letter.

---

[3] Emphasis added.

## Plaintiff's Section 512(g) Counter Notice

162. On September 22, 2026, Plaintiff's undersigned counsel served Defendant Meta with a counter notice under 17 U.S.C. § 512(g) ("the DMCA Counter Notice").

163. Plaintiff served Defendant Meta with the DMCA Counter Notice via email to Defendant Meta's designated email address, namely "ip@meta.com."

164. Out of an abundance of caution, Plaintiff also personally served Defendant Meta with the DMCA Counter Notice to Defendant Meta's registered agent for service of process in California.

165. Attached as **Exhibit 11** is a copy of the DMCA Counter Notice.

166. Attached as **Exhibit 12** is a copy of the Proof of Service of the DMCA Counter Notice.

167. Under 17 U.S.C. § 512(g)(2)(B), after service of the DMCA Counter Notice, Defendant Meta was required to promptly notify each of the DOES 1-20 who filed each of the respective False Online Copyright Complaints that Plaintiff Glam and Glits disputed the respective allegation of copyright infringement.

168. Under 17 U.S.C. § 512(g)(2)(C), within ten (10) days of service of the DMCA Counter Notice, each of the DOES 1–20 who filed each of the respective False Online Copyright Complaints was required to file a copyright lawsuit against Plaintiff Glam and Glits, if each of the DOES 1–20 continued to maintain that Plaintiff Glam and Glits had committed copyright infringement.

169. Under 17 U.S.C. § 512(g)(2)(C), within fourteen (14) days of service of the DMCA Counter Notice, if each of the DOES 1–20 who filed each of the respective False Online Copyright Complaints failed to file such a

copyright lawsuit and notify Defendant Meta of such a copyright lawsuit, Defendant Meta was required to restore the posts that had been removed for alleged copyright infringement under each of the False Online Copyright Complaints, respectively, if Defendant Meta wanted to maintain its immunity to suit under 17 U.S.C. § 512.

170. On information and belief, Defendant Meta did not provide notice to each, or any, of DOES 1–20 regarding Plaintiff's DMCA Counter Notice.

171. More than fourteen (14) days have passed since Plaintiff's service of the DMCA Counter Notice.

172. As of the filing of this Complaint, no party has filed a copyright lawsuit against Plaintiff Glam and Glits regarding the subject matter identified in any of the False Online Copyright Complaints.

173. As of the filing of this Complaint, Defendant Meta has not restored the subject matter identified in the False Online Copyright Complaints.

174. As of the filing of this Complaint, Defendant Meta has not re-enabled the @kiaraskynails Instagram Account.

175. Defendant Meta waived its immunity to suit under 17 U.S.C. § 512.

## CAUSES OF ACTION

## COUNT I: MISREPRESENTATION OF COPYRIGHT INFRINGEMENT UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 512(f)

***(against DOE Defendants 1 through 20)***

176. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth at length herein.

177. By submitting the False Online Copyright Complaints to Defendant Meta, Defendants DOES 1–20, and each of them, knowingly and intentionally made a false claim of copyright infringement.

178. Each of the six False Online Copyright Complaints was submitted as, and functioned as, a notification of claimed copyright infringement.

179. As such, each of the six False Online Copyright Complaints is a statutory § 512(c)(3) notice.

180. Specifically, and without limitation, each of the False Online Copyright Complaints was false and misleading because:

a. DOES 1–20 knowingly, intentionally, and falsely represented that they were the owners of the respective copyrighted work, or were the representatives of such owners, when they were not;

b. DOES 1–20 knowingly, intentionally, and falsely represented that Plaintiff Glam and Glits did not have authorization to post the copyrighted works, when it did;

c. DOES 1–20 submitted the six False Online Copyright Complaints within approximately 17 days using only three (3) Gmail addresses;

d. The email address Forsttom8@gmail.com was used for three complaints purporting to assert rights associated with two different creators;

e. The email address Salimartinxx@gmail.com was used for two complaints purporting to assert rights associated with two different creators.

f. In three of the six False Online Copyright Complaints, the name used on the complaint did not match the actual creator's name;

g. DOES 1–20 used misleading and false personally identifying information when using the "Dummy Email Accounts" to submit the False Online Copyright Complaints; and

h. DOES 1–20 never filed a lawsuit for copyright infringement against Plaintiff Glam and Glits.

181. The DOE Defendants' knowledge of the falsity of the six False Online Copyright Complaints is demonstrated by the facts identified in the preceding paragraphs above.

182. As a result of the DOE Defendants' acts alleged herein, Plaintiff has suffered, is suffering, and will continue to suffer substantial damage to its business in the form of lost profits and injury to goodwill and reputation.

183. As a result of the DOE Defendants' knowing material

misrepresentations, Plaintiff is entitled — pursuant to 17 U.S.C. § 512(f) — to all damages, including costs and attorneys' fees, which Plaintiff incurred as a result of Defendant Meta's reliance upon the DOE Defendants' misrepresentations.

184. On information and belief, unless restrained by this Court, DOES 1–20 will submit additional false online copyright complaints if and when the @kiaraskynails Instagram Account is restored by Defendant Meta.

185. Unless this Court restrains the DOE Defendants from further commission of the aforementioned acts, Plaintiff will suffer irreparable injury, for which it is without an adequate remedy at law. Accordingly, Plaintiff seeks an order enjoining Defendants from sending any further wrongful notices or complaints in connection with Plaintiff's posts on Instagram or on any other Internet service provider.

## COUNT II: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

***(against Defendants DOES 1 through 20)***

186. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth at length herein.

187. At all relevant times, Plaintiff had one or more contracts with Defendant Meta.

188. Specifically, as further pleaded below, Plaintiff had a contract with Defendant Meta for use of the @kiaraskynails Instagram Account, based on the Instagram Terms of Use (the "TOU Contract").

189. DOES 1–20 were aware of the TOU Contract, because DOES 1–20,

and each of them, knew of the existence of the @kiaraskynails Instagram Account, and further because all Instagram users are aware that their use of Instagram is governed by, among other laws and rules, the Instagram Terms of Use. Still further, the DOEs knew Kiara Sky operated the account under Instagram's Terms of Use and deliberately used Defendant Meta's reporting system to trigger enforcement against the @kiaraskynails Instagram Account.

190. The DOE Defendants' violation of 17 U.S.C. § 512(f) constitutes a wrongful interference by DOES 1–20, with the TOU Contract.

191. DOES 1–20, and each of them, intentionally and unjustifiably interfered with the TOU Contract by submitting the six False Online Copyright Complaints.

192. As a result of the actions of DOES 1–20, and each of them, the False Online Copyright Complaints caused Defendant Meta to wrongfully breach the TOU Contract.

193. As a result of DOES 1–20's wrongful interference, Plaintiff has been damaged in an unknown but ever increasing amount of monetary damages. Prior to the Deactivation, Plaintiff's @kiaraskynails Instagram Account generated approximately $100,000 monthly in direct ad related sales. However, the total impact of the KS Instagram Account on Plaintiff's revenues is much higher. Customers also discovered Plaintiff through the @kiaraskynails Instagram Account post or an allied creator post then later purchased KIARA SKY® products through Plaintiff's website, Amazon, Sally Beauty, CosmoProf, another retailer, a distributor, or made a repeat purchase. The KS Instagram Account also supported Plaintiff's new product launches, brand awareness, retailer demand, creator relationships, customer acquisitions, and overall goodwill.

At a minimum, Plaintiff has been damaged by lost sales directly attributable to Instagram advertising in the amount of at least $100,000 per month since the KS Instagram Account's Deactivation. Plaintiff also seeks monetary damages according to proof for the full business impact of the Deactivation.

194. Further, as a result of DOES 1–20's wrongful interference, Plaintiff has been forced to expend valuable time and resources of its owners and employees in an attempt to address the False Online Copyright Complaints, rather than spend its time and resources on economically-productive activities.

195. Further, as a result of DOES 1–20's wrongful interference, Plaintiff has been forced to expend attorney fees to attempt to address the False Online Copyright Complaints, in an amount to be determined at trial.

196. On information and belief, unless restrained by this Court, DOES 1–20, and each of them, will continue to submit false copyright complaints against Plaintiff's postings if and when the @kiaraskynails Instagram Account is restored, and will otherwise continue to interfere with Plaintiff's contractual relationship with Defendant Meta.

197. Plaintiff's injury from such continued interference — including the loss of its established @kiaraskynails Instagram Account, the disruption of its contractual relationship with Defendant Meta, and the loss of the audience, goodwill, and primary customer-communication channel that Plaintiff built over more than thirteen years — is irreparable and cannot be adequately measured or compensated by monetary damages alone. Plaintiff therefore has no adequate remedy at law.

198. Accordingly, Plaintiff is entitled to, and seeks, a permanent injunction restraining DOES 1–20, and each of them, from submitting any further

false or wrongful copyright complaints or notices concerning Plaintiff's postings on Instagram or any other service, and from otherwise interfering with Plaintiff's contractual relationship with Defendant Meta.

## COUNT III: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

***(against Defendants DOES 1 through 20)***

199. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth at length herein.

200. At all relevant times, Plaintiff had one or more prospective economic relationships with customers and purchasers of KIARA SKY® products.

201. Specifically, as further pleaded herein, Plaintiff had economic relationships with customers who purchased KIARA SKY® products through and as a result of postings on the @kiaraskynails Instagram Account. As a result of DOES 1–20's wrongful interference, Plaintiff has been damaged in an unknown but ever increasing amount of monetary damages. Prior to the Deactivation, Plaintiff's @kiaraskynails Instagram Account generated approximately $100,000 monthly in direct ad related sales. However, the total impact of the KS Instagram Account on Plaintiff's revenues is much higher. Customers also discovered Plaintiff through the @kiaraskynails Instagram Account post or an allied creator post then later purchased KIARA SKY® products through Plaintiff's website, Amazon, Sally Beauty, CosmoProf, another retailer, a distributor, or made a repeat purchase. The KS Instagram Account also supported Plaintiff's new product launches, brand awareness, retailer demand, creator relationships, customer acquisitions, and overall goodwill.

At a minimum, Plaintiff has been damaged by lost sales directly attributable to Instagram advertising in the amount of at least $100,000 per month since the KS Instagram Account's Deactivation. Plaintiff also seeks monetary damages according to proof for the full business impact of the Deactivation.

202. These existing and prospective economic advantages were likely to continue, absent the wrongful interference by DOES 1–20, namely the DOE Defendants' violation of 17 U.S.C. § 512(f).

203. On information and belief, DOES 1–20 were aware of the economic relationships between Plaintiff and its online customers, because DOES 1–20, and each of them, knew of the existence of the @kiaraskynails Instagram Account.

204. On information and belief, DOES 1–20, and each of them, are involved in the nail industry, and on further information and belief, are Instagram users, and have seen KIARA SKY® products available for purchase through the @kiaraskynails Instagram Account on Instagram.

205. DOES 1–20, and each of them, intentionally and unjustifiably interfered with the relationships between Plaintiff and its customers by submitting the six False Online Copyright Complaints.

206. As a result of the actions of DOES 1–20, and each of them, the False Online Copyright Complaints caused Defendant Meta to wrongfully deactivate the @kiaraskynails Instagram Account and thus sever Plaintiff's ability to sell KIARA SKY® products through Instagram.

207. As a result of DOES 1–20's wrongful interference, Plaintiff has been damaged in an unknown but ever increasing amount of monetary damages. Plaintiff's @kiaraskynails Instagram Account generated approximately $100,000

monthly in direct ad related sales prior to the Deactivation. However, the total monetary damage from Deactivation is higher because most of the Deactivation's business impact does not stem from direct Instagram ad-related revenue. Customers also discovered Plaintiff through an @kiaraskynails Instagram Account post or an allied creator post, then later purchased through Plaintiff's website, Amazon, Sally Beauty, CosmoProf, another retailer, a distributor, or made a repeat purchase. The KS Instagram Account also supported Plaintiff's new product launches, brand awareness, retailer demand, creator relationships, customer acquisitions, and overall goodwill.

208. Further, as a result of these wrongful interferences, Plaintiff has been forced to expend valuable time and resources of its owners and employees in an attempt to address the False Online Copyright Complaints, rather than spend its time and resources on economically-productive activities.

209. Further, as a result of these wrongful interferences, Plaintiff has been forced to expend attorney fees to attempt to address the False Online Copyright Complaints, in an amount to be determined at trial.

210. On information and belief, unless restrained by this Court, DOES 1–20, and each of them, will continue to submit false copyright complaints against Plaintiff's postings if and when the @kiaraskynails Instagram Account is restored, and will otherwise continue to interfere with Plaintiff's prospective economic relationships with its customers.

211. Plaintiff's injury from such continued interference — including the loss of prospective sales, the disruption of customer relationships, and the loss of the goodwill and audience that Plaintiff built through the @kiaraskynails Instagram Account — is irreparable and cannot be adequately measured or compensated by monetary damages alone, such that Plaintiff has no adequate

remedy at law.

212. Accordingly, Plaintiff is entitled to, and seeks, a permanent injunction restraining DOES 1–20, and each of them, from submitting any further false or wrongful copyright complaints or notices concerning Plaintiff's postings on Instagram or any other service, and from otherwise interfering with Plaintiff's prospective economic relationships with its customers.

## COUNT IV:
## UNFAIR COMPETITION
## UNDER CAL. BUS. & PROF. CODE § 17200 ET SEQ.

***(against DOE Defendants)***

213. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth at length herein.

214. California Business and Professions Code § 17200 et seq. (the "UCL") prohibits any unlawful, unfair, or fraudulent business act or practice. The acts and practices of DOES 1–20 alleged herein constitute unlawful, unfair, and fraudulent business acts and practices within the meaning of the UCL.

215. The acts and practices of DOES 1–20 are ***unlawful*** because, among other things, they violate 17 U.S.C. § 512(f), which imposes liability on any person who knowingly and materially misrepresents that material or activity is infringing. By submitting the six False Online Copyright Complaints to Defendant Meta, DOES 1–20, and each of them, knowingly and materially misrepresented that Plaintiff's postings on the @kiaraskynails Instagram Account infringed copyrights, as alleged above. The UCL borrows this statutory violation and makes it independently actionable as an unlawful business practice.

216. The acts and practices of DOES 1–20 are ***unfair*** because, on

information and belief, DOES 1–20 are Plaintiff's direct competitors in the nail industry, and their conduct — fabricating identities, creating the Dummy Email Accounts, and submitting false copyright complaints to disable a direct competitor's principal marketing and sales channel — significantly threatens and harms competition and violates the policy and spirit of the laws protecting fair competition. The harm to Plaintiff and to competition caused by this conduct is not outweighed by any countervailing benefit to consumers or to competition.

217. The acts and practices of DOES 1–20 are ***fraudulent*** because the False Online Copyright Complaints employed fabricated names and the Dummy Email Accounts, and falsely asserted copyright ownership and infringement, in a manner likely to deceive — and that did in fact deceive — Defendant Meta into removing Plaintiff's postings and deactivating the @kiaraskynails Instagram Account.

218. As a direct and proximate result of DOES 1–20's unfair competition, Plaintiff has suffered injury in fact and has lost money or property, including lost sales of KIARA SKY® products, the loss of use of the @kiaraskynails Instagram Account, and injury to its goodwill and reputation.

219. Pursuant to California Business and Professions Code § 17203, Plaintiff is entitled to injunctive relief restraining DOES 1–20, and each of them, from continuing to engage in such unfair competition, including from submitting any further false copyright complaints against Plaintiff's postings on Instagram or any other service. Unless enjoined, DOES 1–20 will continue to engage in such acts, and Plaintiff will suffer irreparable injury for which there is no adequate remedy at law.

220. Plaintiff is further entitled to restitution, pursuant to California Business and Professions Code § 17203, of any money or property that DOES 1–

20 acquired by means of their unfair competition, together with all other relief available under the UCL.

## COUNT V:
## DECLARATORY AND INJUNCTIVE RELIEF

***(against all Defendants)***

221. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth at length herein.

222. The DOE Defendants, and each of them, contend that Plaintiff infringed their alleged copyrights by posting their original works on Instagram.

223. The DOE Defendants complained to Defendant Meta about Plaintiff's alleged copyright infringement and requested removal of the same postings.

224. Plaintiff contends it never infringed the DOE Defendants' alleged copyrights.

225. There is a real and actual controversy between Plaintiff and Defendants regarding whether Plaintiff posted copyright-infringing content on its Instagram website, which Plaintiff has not.

226. On information and belief, the DOE Defendants plan to continue to interfere with Plaintiff's business in the aforementioned manner for the indefinite future.

227. As a result of the DOE Defendants' actions, Defendant Meta deactivated Plaintiff's @kiaraskynails Instagram Account and has informed Plaintiff that Defendant Meta will permanently delete the @kiaraskynails Instagram Account on or after January 17, 2027.

228. Despite Plaintiff's service of a counter notice under 17 U.S.C. § 512(g) on Defendant Meta, Defendant Meta has not restored the posts that are subject to the Takedowns; nor has Defendant Meta reactivated Plaintiff's @kiaraskynails Instagram Account.

229. Plaintiff seeks to advertise its products and reach its customers through Instagram but, as a result of Defendants' actions, is unable to do so. As a result, Plaintiff continues to lose profits and suffer damage to its business and reputation.

230. Accordingly, Plaintiff seeks a declaratory judgment that Plaintiff has not infringed any of the copyrighted works identified in any of the six False Online Copyright Complaints.

## COUNT VI:
## BREACH OF CONTRACT

***(against Defendant Meta)***

231. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth at length herein.

232. Plaintiff entered into a service contract with Defendant Meta consisting of Instagram's Terms of Use, namely the previously identified TOU Contract, including representations made to Plaintiff described herein.

233. Defendant's Instagram TOU contains enforceable promises that Instagram made to Plaintiff, including, but not limited to, the following:

> a. "We develop and use tools and offer resources to our community members that help make their experiences positive and inclusive, including when we think they might need help. We also have teams and systems that

work to combat abuse and violations of our Terms and policies, as well as harmful and deceptive behavior."

b. "You can't impersonate others or provide inaccurate information. You don't have to disclose your identity on Instagram, but you must provide us with accurate and up to date information including registration information), which may include providing personal data. Also, you may not impersonate someone or something you aren't . . ."

c. "You can't do anything to interfere with or impair the intended operation of the Service. ***This includes misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals***."

d. "If you believe your account has been terminated in error . . . consult our Help Center."

e. "If your content was removed because of a copyright report, you can submit an appeal or a DMCA counter-notification. You received instructions in the message we sent you."

f. "If we have informed you that content you posted was removed under the notice and counter-notice procedures of the United States Digital Millennium Copyright Act (DMCA), you may be able to file a DMCA counter-notification. Learn more about DMCA counter-notifications."

g. "If your content was removed because of a copyright report submitted outside the DMCA procedures, you can submit an appeal. Instructions about how to submit an appeal are included in the message we have sent you. If your account has been disabled, you can submit an appeal by logging into your account and following the on-screen instructions."

> h. "***Once we are in receipt of a valid and adequately substantiated appeal, we will review it expeditiously. Appeals can often be resolved quickly when our requests for further information are responded to promptly, where the content in question is not infringing and does not violate our Terms of Service or Community Standards***, or where the initial report was a mistake. Appeal decisions can take longer in circumstances where additional review or analysis by our teams is required."[4]

234. Plaintiff performed all, or substantially all, of its material obligations under the TOU Contract.

235. Specifically, <u>inter</u> <u>alia</u>, Plaintiff:

a. submitted a valid and substantiated copyright appeal for each of the six False Online Copyright Complaints;

b. submitted evidence demonstrating that Plaintiff had authorization to post the subject matter identified in each of the six False Online Copyright Complaints;

c. identified facts demonstrating that the six False Online Copyright Complaints were false and submitted wrongfully, for a deceptive and illegal purpose; and

d. submitted the DMCA Counter Notifications.

236. Defendant Meta breached the TOU Contract by, at least:

---

[4] Emphases added.

a. failing to review Plaintiff's valid and substantiated copyright appeal in an expeditious manner; namely, by taking no action during the three (3) months since Plaintiff submitted the Internal Appeal Submissions; and

b. failing to take reasonable steps to protect Plaintiff from the wrongful acts of the DOE Defendants, including the DOE Defendants "misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals."

237. As a direct and proximate result of Defendant Meta's material breaches of the TOU Contract, Plaintiff has suffered damages and continues to suffer damages.

238. To redress this harm, Plaintiff seeks injunctive relief in the form of an order that Defendant Meta shall conduct a full, complete, and reasonable review of the Internal Appeal Submissions, the DMCA Counter Notice, the Takedowns and the Deactivation.

239. Plaintiff also seeks monetary damages in an amount unknown at this time but to be determined at trial.

## COUNT VII:
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

***(against Defendant Meta)***

240. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth at length herein.

241. In every contract, there is implied a promise of good faith and fair

dealing.

242. Plaintiff entered into a services contract with Defendant Meta's Instagram service consisting of the TOU Contract.

243. The TOU Contract contains enforceable promises that Defendant Meta made to Plaintiff including, without limitation, the promises set forth in the paragraphs above.

244. By substantially failing to act upon, among other things, Plaintiff's Internal Appeal Submissions demonstrating that the six False Online Copyright Complaints were in fact false, Defendant Meta engaged in conduct that frustrated and interfered with Plaintiff's right to the benefits of the TOU Contract, including, without limitation, the right to dispute false copyright claims made against Plaintiff's @kiaraskynails Instagram Account.

245. Plaintiff performed all, or substantially all, of its material obligations under the TOU Contract.

246. As a direct and proximate result of Defendant Meta's material breaches of the TOU Contract, as described above, Plaintiff suffered damages. To redress such harm, Plaintiff seeks the relief set forth below.

## COUNT VIII:
## PROMISSORY ESTOPPEL

***(against Defendant Meta)***

247. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth at length herein.

248. Through its Instagram Terms of Use, its Help Center instructions governing copyright appeals, and the written communications it sent to Plaintiff

described above, Defendant Meta made clear and unambiguous promises to Plaintiff regarding how it would handle an appeal of a copyright removal and the disabling of an account.

249. Specifically, Defendant Meta promised that, "[o]nce we are in receipt of a valid and adequately substantiated appeal, we will review it expeditiously," and that such appeals "can often be resolved quickly … where the content in question is not infringing and does not violate our Terms of Service or Community Standards, or where the initial report was a mistake."

250. Defendant Meta further promised, in its July 21, 2026 notice to Plaintiff, that if Plaintiff believed Defendant Meta had "made a mistake," Plaintiff could appeal, and Defendant Meta stated or implied that it would use its teams and systems to investigate the False Online Copyright Complaints and that, if it determined that Plaintiff had not in fact infringed any copyright, the @kiaraskynails Instagram Account would be restored.

251. Each of these promises was clear and unambiguous in its terms: Defendant Meta committed to expeditiously review a valid and substantiated appeal and to resolve the appeal — including by restoring removed content and a disabled account — where the content was not infringing or the underlying report was a mistake.

252. Defendant Meta made these promises with the reasonable expectation that they would induce action or forbearance on the part of Plaintiff — namely, that Plaintiff would submit appeals and supporting evidence through Defendant Meta's internal channels, follow Defendant Meta's prescribed appeal procedures, and await Defendant Meta's review rather than immediately pursuing other remedies.

253. In actual, reasonable, and foreseeable reliance on Defendant Meta's promises, Plaintiff, among other things:

a. submitted a timely appeal through Defendant Meta's in-app and Help Center forms for each of the six False Online Copyright Complaints;

b. gathered and submitted declarations and other evidence from the content creators demonstrating that Plaintiff was authorized to post each work;

c. waited the one hundred twenty (120) hours that Defendant Meta instructed Plaintiff to wait before escalating;

d. served a counter notice under 17 U.S.C. § 512(g); and

e. refrained from promptly pursuing other avenues of relief.

254. Plaintiff's reliance on Defendant Meta's promises was reasonable and foreseeable and was the type of reliance Defendant Meta reasonably should have expected its promises to induce.

255. Defendant Meta did not perform its promises. Defendant Meta did not review Plaintiff's appeals expeditiously, did not meaningfully investigate the Internal Appeal Submissions, and has not restored the removed postings or reactivated the @kiaraskynails Instagram Account, despite Plaintiff's substantiated showing that the False Online Copyright Complaints were false and that Plaintiff had authorization to post each work.

256. As a direct and proximate result of Plaintiff's reliance on Defendant Meta's promises, Plaintiff has been injured, including through the continued loss of use of the @kiaraskynails Instagram Account. As a result of DOES 1–20's

wrongful interference, Plaintiff has been damaged in an unknown but ever increasing amount of monetary damages. Prior to the Deactivation, Plaintiff's @kiaraskynails Instagram Account generated approximately $100,000 monthly in direct ad related sales. However, the total impact of the KS Instagram Account on Plaintiff's revenues is much higher. Customers also discovered Plaintiff through the @kiaraskynails Instagram Account post or an allied creator post then later purchased KIARA SKY® products through Plaintiff's website, Amazon, Sally Beauty, CosmoProf, another retailer, a distributor, or made a repeat purchase. The KS Instagram Account also supported Plaintiff's new product launches, brand awareness, retailer demand, creator relationships, customer acquisitions, and overall goodwill.

At a minimum, Plaintiff has been damaged by lost sales directly attributable to Instagram advertising in the amount of at least $100,000 per month since the KS Instagram Account's Deactivation. Plaintiff also seeks monetary damages according to proof for the full business impact of the Deactivation.

257. Other losses include the loss of the audience and goodwill Plaintiff built over more than thirteen years and the resources Plaintiff expended pursuing Defendant Meta's appeal process.

258. Defendant Meta's failure to honor its promises was a substantial factor in causing, and exacerbating, Plaintiff's injury.

259. Injustice can be avoided only by enforcement of Defendant Meta's promises. Plaintiff therefore seeks enforcement of those promises, including an order requiring Defendant Meta to review Plaintiff's appeals and to restore the @kiaraskynails Instagram Account and the removed postings, together with damages resulting from Plaintiff's detrimental reliance in an amount to be proven at trial, and all other relief set forth below.

# PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully prays for judgment in its favor as follows:

A. On Count I (Misrepresentation of Copyright Infringement under 17 U.S.C. § 512(f)), against DOE Defendants 1–20: All damages Plaintiff incurred as a result of the DOE Defendants' misrepresentations, including lost profits and injury to goodwill and reputation, together with costs and attorneys' fees, pursuant to 17 U.S.C. § 512(f), or, in the alternative, nominal damages; and a permanent injunction enjoining the DOE Defendants from submitting any further false or wrongful copyright notices or complaints concerning Plaintiff's postings on Instagram or any other service;

B. On Counts II and III (Tortious Interference with Contractual Relations and Tortious Interference with Prospective Economic Advantage), against DOE Defendants 1–20: Compensatory damages according to proof; exemplary and punitive damages pursuant to California Civil Code § 3294 for the DOE Defendants' malicious conduct; and a permanent injunction enjoining the DOE Defendants from submitting any further false or wrongful copyright notices or complaints and from otherwise interfering with Plaintiff's contractual relationship with Defendant Meta and Plaintiff's prospective economic relationships with its customers;

C. On Count IV (Unfair Competition under Cal. Bus. & Prof. Code § 17200 et seq.), against DOE Defendants 1–20: Restitution of any money or property that the DOE Defendants acquired by means of

their unfair competition, and a permanent injunction restraining the DOE Defendants from continuing to engage in such unfair competition, pursuant to California Business and Professions Code § 17203;

D. On Count V (Declaratory and Injunctive Relief), against all Defendants: A declaratory judgment that Plaintiff has not infringed any of the copyrighted works identified in any of the six False Online Copyright Complaints; and injunctive relief requiring Defendant Meta to restore the removed postings and to reactivate the @kiaraskynails Instagram Account to the state in which it existed as of July 21, 2026, and enjoining Defendant Meta from permanently deleting the @kiaraskynails Instagram Account;

E. On Count VI (Breach of Contract), against Defendant Meta: Compensatory damages according to proof; and injunctive relief requiring Defendant Meta to conduct a full, complete, and reasonable review of the Internal Appeal Submissions, the DMCA Counter Notice, the Takedowns, and the Deactivation, and to restore the removed postings and reactivate the @kiaraskynails Instagram Account;

F. On Count VII (Breach of the Covenant of Good Faith and Fair Dealing), against Defendant Meta: Compensatory damages according to proof;

G. On Count VIII (Promissory Estoppel), against Defendant Meta: Enforcement of Defendant Meta's promises, including an order requiring Defendant Meta to review Plaintiff's appeals and to restore the removed postings and reactivate the @kiaraskynails

Instagram Account, together with damages resulting from Plaintiff's detrimental reliance according to proof;

H. Plaintiff's costs of suit incurred herein;

I. Pre-judgment and post-judgment interest as allowed by law; and

J. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Date: October 27, 2026

LAPPLE UBELL IP LAW, LLP

By: /s/Matthew C. Lapple
Matthew C. Lapple

*Attorneys for Plaintiff*
GLAM AND GLITS NAIL DESIGN, INC.